UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ROSETTA STONE INC., LAURENCE | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| FRANKLIN, A. JOHN HASS III, AEDHMAR | : **THE SECURITIES EXCHANGE ACT** |
| HYNES, PATRICK GROSS, GEORGE | : **OF 1934** |
| LOGUE, DAVID NIERENBERG, KATHRYN | : |
| EBERLE WALKER, JESSIE WOOLLEY- | : **JURY TRIAL DEMANDED** |
| WILSON, and STEVEN YANKOVICH, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Rosetta Stone Inc. ("Rosetta Stone or the "Company") and the members of Rosetta Stone's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Rosetta Stone by affiliates of Cambium Holding Corp. ("Cambium").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on September 15, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Empower Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Cambium, will merge with and into Rosetta Stone, with Rosetta Stone continuing as the surviving corporation and a wholly-owned subsidiary of Cambium (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 29, 2020 (the "Merger Agreement"), each Rosetta Stone common share issued and outstanding will be converted into the right to receive $30.00 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of Rosetta Stone's outstanding common stock and will expire on October 13, 2020.

3.      Defendants have now asked Rosetta Stone's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Rosetta Stone's financial projections relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Rosetta Stone's stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Rosetta Stone's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Rosetta Stone is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Rosetta Stone common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Laurence Franklin has served as a member of the Board since 2006.

11. Individual Defendant A. John Hass III has served as a member of the Board since 2014 and is the Company's Chief Executive Officer and the Chairman of the Board.

12. Individual Defendant Aedhmar Hynes has served as a member of the Board since 2019.

13. Individual Defendant Patrick Gross has served as a member of the Board since 2006.

14. Individual Defendant George Logue has served as a member of the Board since 2018.

15. Individual Defendant David Nierenberg has served as a member of the Board since 2015.

16. Individual Defendant Kathryn Eberle Walker has served as a member of the Board since 2019.

17. Individual Defendant Jessie Woolley-Wilson has served as a member of the Board since 2017.

18. Individual Defendant Steven Yankovich has served as a member of the Board since 2014 and is the Company's Lead Independent Director.

19. Defendant Rosetta Stone is incorporated in Delaware and maintains its principal offices at 1621 North Kent St., Suite 1200, Arlington, Virginia 22209. The Company's common stock trades on the New York Exchange under the symbol "RST."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

22. Rosetta Stone, together with its subsidiaries, provides technology-based learning products in the United States and internationally. It operates through three segments: Literacy, E&E Language, and Consumer Language. The Company develops, markets, and supports a suite of language-learning and literacy solutions consisting of web-based software subscriptions, online and professional services, and mobile applications, as well as practice applications. It also provides administrative tools for performance monitoring, and measure and track learner progress; professional services; and custom solutions, including curriculum development, global collaboration programs, group and live tutoring, and language courses for mission-critical government programs. The Company offers its products under the Rosetta Stone, The Blue Stone Logo, Lexia, Lexia PowerUP Literacy, and TruAccent trademarks. It sells its products and services through call centers, websites, app-stores, third party e-commerce websites, retail resellers, consignment distributors, daily deal partners, home shopping resellers, and third-party resellers and distributors, as well as directly to individuals, educational institutions, corporations, and government agencies. Rosetta Stone was founded in 1992 and is headquartered in Arlington, Virginia.

23. On August 31, 2020, the Company announced the Proposed Transaction:

> Arlington, VA, Aug. 31, 2020 (GLOBE NEWSWIRE) -- Rosetta Stone Inc. (NYSE:**RST**) ("Rosetta Stone" or the "Company"), a world leader in technology-based learning solutions, today announced that, following a comprehensive process, it has entered into a definitive agreement to be acquired by Cambium Learning Group ("Cambium"), a leading provider of digital education solutions and a portfolio company of Veritas Capital ("Veritas"). Cambium will acquire Rosetta Stone in an all cash transaction for $30 per share, representing an equity value of approximately $792 million, and a premium of approximately 87.5% to Rosetta Stone's unaffected closing price on July 16, 2020, the last trading day

before a media report was published speculating about a potential sale process.

The Board of Directors of Rosetta Stone unanimously approved the transaction with one director not participating due to a potential interest in the transaction. The companies anticipate completing the transaction in the fourth quarter of 2020, subject to the satisfaction of customary closing conditions.

Founded in 1992, Rosetta Stone's language division uses innovative digital solutions to help all types of learners read, write, and speak more than 30 languages. Under its iconic brand, Rosetta Stone provides technology-based language solutions to individual customers, schools and businesses globally. Lexia Learning, Rosetta Stone's literacy education division, was founded more than 35 years ago and is a leader in the literacy education space. Today, Lexia helps students build reading and oral language skills through its rigorously researched, independently evaluated, and widely respected instruction and assessment blended-learning programs. Solutions include Lexia® Core5® Reading (online differentiated literacy instruction for students of all abilities in grades pre-K-5), Lexia® PowerUp® Literacy (online solution to help struggling readers in grades 6-12 become proficient readers and confident learners), Rosetta Stone® English (online blended solution to build oral language skills in emergent bilinguals), and Lexia® Rapid™ Assessment (research-based, computer-adaptive reading and language assessment).

With a portfolio of award-winning brands, Cambium's digital and blended curriculum, professional learning, and assessment solutions drive proficiency, equity and other learning outcomes in classrooms everywhere. The addition of the Lexia and Rosetta Stone product lines further enhances Cambium's highly unique continuum of digital products. Cambium is backed by Veritas Capital, a leading investment firm with deep industry expertise and over two decades of experience investing in companies that provide critical products and services to government and commercial customers worldwide.

John Hass, Chairman and Chief Executive Officer of Rosetta Stone, said, "This transaction represents the next step on a path that, over the past several years, has transformed our language business and built a previously small K-12 software business into a growing leader in education technology. As part of Cambium, we will have the scale and resources to fulfill our mission and to further leverage the strength of our outstanding team to continue

building and delivering technology-based solutions that support the ability to change learners' lives through language and literacy education. I am especially grateful for the incredible dedication of our global team who, in a difficult environment this year, transitioned smoothly to delivering high-quality learning at home for students and adults."

"Cambium continues to thoughtfully curate a portfolio of only the best learning brands," said John Campbell, Chief Executive Officer of Cambium. "With the significant addition of Rosetta Stone, including Lexia Learning, we are now able to deliver even more expansive solutions to teachers, administrators, and learners everywhere, and offer a continuum of best-in-class digital solutions that deliver personalized instruction. The team at Rosetta Stone is truly exceptional and I look forward to working together to grow their already-impressive leadership position."

"The acquisition of Rosetta Stone brings highly strategic products and intellectual property to Cambium's market-leading family of brands," said Ramzi Musallam, Chief Executive Officer and Managing Partner of Veritas. "We look forward to Cambium's continued investment in its award-winning product portfolio, and are thrilled to be partnering with Rosetta Stone's talented employees as we advance our collective mission of improved learning outcomes through differentiated technology solutions."

The Rosetta Stone Board, company management and advisors drove a deliberate and comprehensive strategic review process. The decision to enter into an agreement with Cambium was the result of this extended evaluation of strategic alternatives by Rosetta Stone's Board of Directors. As part of that review, the Company held discussions with a number of parties, including Cambium, through a formal, competitive process. Further details of the transaction and background of the sale process will be included in the Company's Schedule 14D-9 with respect to the tender offer.

Goldman Sachs & Co. LLC acted as exclusive financial advisor to Rosetta Stone's Board of Directors, and Hogan Lovells US LLP served as the company's legal advisor. Schulte Roth & Zabel LLP acted as Cambium's legal advisor in connection with the transaction.

* * *

24. It is therefore imperative that Rosetta Stone's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.    The Materially Incomplete and Misleading Solicitation Statement**

25. On September 15, 2020, Rosetta Stone filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

26. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Goldman Sachs, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning Rosetta Stone Financial Projections*

27. The Solicitation Statement fails to provide material information concerning financial projections prepared by Rosetta Stone's management and relied upon by the financial advisor in its analyses. The Solicitation Statement indicates that in connection with the rendering of the fairness opinion, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisor with forming a view

8

about the stand-alone valuation of the Company.  Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Rosetta Stone's management provided to the Board and the financial advisor.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-03 (Del. Ch. 2007).

28. For the Projections prepared by the Company's management for Rosetta Stone, including the January 2020 Projections, February 2020 Update, June 2020 Update, July 2020 Update, August 2020 Projections, and the final August 2020 10-year Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) Adjusted EBITDA; (b) Bookings-Based Adjusted EBITDA; and (c) Unlevered Free Cash Flow as calculated by Goldman Sachs, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

29. When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

32. With respect to Goldman Sachs' *Implied Premia and Multiples Analysis*, the Solicitation Statement fails to disclose: (i) the total number of fully diluted shares of Rosetta Stone's common stock outstanding as of August 21, 2020; and (ii) Rosetta Stone's net cash as of June 30, 2020.

33. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Solicitation Statement fails to disclose: (i) Goldman Sachs' basis for applying an enterprise value to next twelve months' revenue multiples of 2.0x to 3.0x to estimates of the Company's revenue for each of the fiscal years 2021 to 2023; (ii) the Company's net cash as of

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

December 31 of each of the fiscal years 2020 to 2022; (iii) the Company's projected fully diluted weighted average shares outstanding for each of the fiscal years 2020 to 2022; and (iv) the inputs and assumptions underlying applying the discount rate of 10.2%.

34. With respect to Goldman Sachs' *Selected Publicly Traded Companies Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman Sachs.

35. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 10.0% to 12.0%; (ii) the basis for applying a range of perpetual growth rates of 1.75% to 2.75%; (iii) the range of illustrative terminal values of the Company; (iv) the Company's unlevered cash flows used in the analysis; (v) the number of fully diluted outstanding shares of the Company as of August 21, 2020; (vi) the Company's net operating loss tax attributes as of June 30, 2020; and (vii) the Company's net cash as of June 30, 2020.

36. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Solicitation Statement fails to disclose Goldman Sachs' basis for selecting a reference range of EV/NTM Revenue multiples of 2.7x to 3.9x.

37. With respect to Goldman Sachs' *Premia Analysis*, the Solicitation Statement fails to disclose: (i) the transactions observed by Goldman Sachs in the analysis; and (ii) the premiums paid in the transactions.

38. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to

tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

41.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

43. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

44. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek other remedies. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

45. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

### Violations of Section 14(d)(4) of the Exchange Act and
### Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

47. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

48. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

49. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

50. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

51. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

52. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.  The Individual Defendants acted as controlling persons of Rosetta Stone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Rosetta Stone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Rosetta Stone, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Rosetta Stone, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

57. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 16, 2020      **RIGRODSKY & LONG, P.A.**

              By: */s/ Gina M. Serra*

**OF COUNSEL:**        Brian D. Long (#4347)
              Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**  300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**     Wilmington, DE 19801
Gloria Kui Melwani        Telephone: (302) 295-5310
270 Madison Avenue       Facsimile: (302) 654-7530
New York, NY 10016       Email: bdl@rl-legal.com
Telephone: (212) 545-4600     Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com    *Attorneys for Plaintiff*